The Employment Law Firm                                    Attorney for Plaintiff
Cynthia L. Pollick, Esquire, LLM, MA
ID No.: 83826
PO Box 757
Clarks Summit PA 18411
(570) 510-7630

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAWRENCE J. KANSKY, | : | |
| | : | JURY TRIAL DEMANDED |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | DOCKET NO.: 20-42 |
| LUZERNE COUNTY, et al., | : | |
| | : | |
| Defendants | : | |

---

## BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## BRIEF STATEMENT OF FACTS

Plaintiff possessed a License to Carry a Firearm Permit No. 34728 issued by Defendant Luzerne County Sheriff's Department. On or about May 21, 2019, Plaintiff called 911 several times regarding the need for assistance related to an injured raccoon that was located near 72 W. North Street, Wilkes-Barre, Pennsylvania, starting at 5:37 am and continuing to do so during the next 8 hours with absolutely no response from law enforcement.

1

On or about May 21, 2019, after waiting 8 hours for assistance from law enforcement, Plaintiff used his legally issued firearm to shoot at the raccoon, which was suffering, injured, and possibly had rabies or other diseases, which are potential dangers to the public.

On or about June 3, 2019, Plaintiff was charged with two (2) counts of recklessly engaging another person, disorderly conduct and unlawful acts concerning taking of furbearers. On or about June 26, 2019, Plaintiff spoke out to a local media outlets, including the Citizen's Voice newspaper, related to the charges that were filed against him. https://www.citizensvoice.com/news/lawyer-charged-for-raccoon-mercy-killing-1.2501354. Specifically, Plaintiff stated that "when a wild animal is wounded, they are very dangerous animal" and admitted that he shot the injured and dying raccoon. Additionally, Plaintiff stated publicly as a citizen that "I shot it to put it out of its misery and to protect the public."

Plaintiff was protesting the fact that he was charged, and the entire article surrounded the lack of police response since it describes how Plaintiff waited and called 911 several times seeking assistance to no avail. Plaintiff described for the media how the raccoon made "crying noises" and that the raccoon had "completely crushed" legs and that "[w]hen a wild animal is

wounded, they are a very dangerous animal". Additionally, Plaintiff told the media that "[e]verything I did, I made as safe as I was trained to do"; nonetheless, the police charged him criminally anyway. The fact that Plaintiff's comments were published shows the community was interested in a "[l]awyer charged for raccoon mercy killing". https://www.citizensvoice.com/news/lawyer-charged-for-raccoon-mercy-killing-1.2501354.

The very next day, June 27, 2019, Defendant Luzerne County Sheriff Brian Szumski revoked Plaintiff's License to Carry a Firearm without any pre or post due process and in violation of the Second Amendment, which provides all citizens with the right to bear arms in retaliation for having spoken as a citizen to the local press. Additionally, Defendant Luzerne County Sheriff Brian Szumski threatened that criminal charges would be filed against Plaintiff if he did not relinquish his License to Carry a Firearm within five (5) days. On July 3, 2019, Plaintiff relinquished his License to Carry a Firearm to Defendant Luzerne County Sheriff's Department.

## QUESTION PRESENTED

I.     Whether this Court should allow this case to move forward since Plaintiff has stated claims on all counts?

Suggested Answer: In the Affirmative

## DISCUSSION OF LAW

### POINT ONE
**Plaintiff, a non-public employee, stated a claim
for First Amendment Retaliation**

"In contrast to the public employee context, a non-public employee in a First Amendment retaliation case must plead: '(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.'" Linskey v. Guariglia, 2012 U.S. Dist. LEXIS 52821, *15-16 (M.D. Pa. 2012). Here, Defendants incorrectly seek dismissal of Plaintiff's claim for First Amendment Retaliation based on the argument that Plaintiff's speech to the media was not protected. However, Plaintiff easily surpasses that hurdle since he is not a public employee, but rather a private citizen and acting in that capacity at all times when he spoke out to the media.

Defendants continue to argue that the protected activity is the shooting of the raccoon; however, that has never been the actions that Plaintiff sought relief for in this action; and in fact, Plaintiff made sure he specifically stated that in his latest complaint. (Doc. 57, pp. 20).   It is Plaintiff's speech to the media about the events that occurred and the lack of response by the police that form the basis of his claim for First Amendment. Therefore, Plaintiff, a non-employee, easily meets the test for a First Amendment claim.

## POINT TWO[1]
### Plaintiff already was issued a firearm license; and therefore, it was his property

"Core to the existence of an individual property interest is the requirement that the plaintiff have 'a legitimate claim of entitlement to' the interest at issue that stems from 'an independent source such as state law' or 'rules or understandings that secure certain benefits.'" McKinney v. Univ. of Pittsburgh, 915 F.3d 956, 960 (3d Cir. 2019).

---

[1] Defendants are incorrect that Plaintiff's statements to the press are not protected speech under the First Amendment; and protect a citizen from retaliation by a public entity or policyholder since he was acting as a citizen at all times because he was not a public employee. Therefore, Plaintiff's claim that the Luzerne County policy is overbroadly stands; and Defendants' two (2) paragraph argument does not support dismissal of Count II.

"Appellant does not contend that procedural due process is not applicable to the termination of welfare benefits. Such benefits are a matter of statutory entitlement for persons qualified to receive them. Their termination involves state action that adjudicates important rights. The constitutional challenge cannot be answered by an argument that public assistance benefits are "a 'privilege' and not a 'right." Goldberg v. Kelly, 397 U.S. 254, 261-262 (3d Cir. 1970).

Here, Luzerne County enacted a policy that provides a process for ownership of a license to carry a firearm. Plaintiff met that stringent process and was given a license to carry a firearm. One he purchased a firearm pursuant to that licensing public benefit, Plaintiff's firearm became his property and he had ownership rights associated with the same. Consequently, just as in Goldberg, Plaintiff had a right in that Luzerne County public benefit of obtaining a firearm and being licensed to carry a firearm and the revocation of such benefit required due process.

Therefore, there is no doubt that the termination of that right required constitutional safeguards and the revocation process could not be vague. The policy is vague since it does not advise the benefit holder of the reasons when that license/public benefit would be revoked.

Here, Defendants again miss the mark.  It is not the state statute cited at issue, but rather Luzerne County policy. Plaintiff again made this fact known to Defendants in the latest compliant. (Doc. 57 pp. 36). Defendants do not make any argument regarding the Luzerne County policy that Plaintiff contends is vague.  Therefore, Plaintiff easily surpasses Defendants' motion to dismiss since Plaintiff had a property interest in his license to carry a firearm and Defendants make no further argument for dismissal on that claim that is relevant to the Luzerne County legislation/policy.

<strong><u>POINT THREE</u></strong><br/><strong>Plaintiff has stated an "as-applied" challenge to<br/>Luzerne County revocation policy</strong>

"[A]n as-applied challenge 'does   not   contend   that   a   law   is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." <u>Zedonis v. Lynch</u>, 233 F. Supp. 3d 417, 424 f.9 (M.D. Pa. 2019). "Upon a thorough review of the facts of the instant matter, we find that Mr. Yox has adequately and compellingly demonstrated the factual grounds for his as-applied challenge. He has shown that he is "no more dangerous than a typical law-abiding citizen" at this point in his life, and that he is not a

"continuing threat" to himself or others." <u>Keyes v. Lynch</u>, 195 F. Supp. 3d 702, 722 (M.D. Pa. 2016).

As the Court found in <u>Keyes</u>, when the revocation policy promulgated by Luzerne County that takes a citizen's firearm away from that person if they have a "…character/reputation [which] indicates a danger to public safety" is applied to Plaintiff, who was not convicted of a crime involving a danger to public safety, the revocation policy cannot stand since it violates Plaintiff's constitutional Second Amendment right to bear arms. Therefore, Plaintiff has stated all that is necessary to proceed on a claim under the Second Amendment of the United States Constitution.

As the argument related to qualified immunity, "… 'the affirmative defense of qualified immunity generally cannot support a grant of a Rule 12(b)(6) motion to dismiss because the defense requires an investigation into the facts and evidence not available at this early stage of the pleadings.'" <u>Byrne v. Trudell</u>, 2013 U.S. Dist. LEXIS 71868, *34 (D. Vt. 2013). The <u>Byrne</u> Court noted, "[t]he deficiency in the record is understandable given the early state of this litigation, and underscores why qualified immunity questions are more often addressed at the summary judgment rather than the motion to dismiss stage." <u>Id.</u> Consequently, just as in <u>Byrne</u>, this Court should decline

to entertain an argument on qualified immunity on this record because it is too premature, and the factual record is undeveloped.

Regardless of the deficient factual reord, the law was clearly established that a reasonable sheriff would know not to revoke a license to carry a firearm on unsubstantiated criminal charges with no standing conviction since the <u>Shafer</u> Court established that legal premise. In <u>Shafer</u> case, this district granted summary judgment on qualified immunity; and therefore, established a case directly on point.

Specifically, the <u>Shafer</u> Court held, "[d]efendant Hose is entitled to qualified immunity because a reasonable person acting in the capacity of Sheriff would not have known that the plaintiff had a clearly established constitutional right not to have his firearm permit revoked, a clearly established constitutional right to have it reinstated after he had been cleared of criminal charges or a clearly established constitutional right to have a permit bearing no notation "Return by Order of Court." <u>Shaffer v. York Cty.</u>, 2009 U.S. Dist. LEXIS 142425, *15-16 (M.D. Pa. 2009). Therefore, since the <u>Shaffer</u> established the law surrounding revocation, Defendant Szumski is not entitled to qualified immunity.

9

## POINT FOUR
### Plaintiff stated a claim for due process since Defendants failed to provide notice, evidence against him or an opportunity to rebut the reasons for the revocation of his license to carry a firearm

As stated above, since Plaintiff possessed a license to carry a firearm he was entitled to that benefit, and it could only be taken away with due process. The Goldberg case held, "[a] state that terminates public assistance payments to a particular recipient without affording him the opportunity for an evidentiary hearing prior to termination denies the recipient procedural due process in violation of the due process clause of the Fourteenth Amendment." Goldberg v. Kelly, 397 U.S. 254, 255 (1970).

Consequently, just as in this case, Defendants were required to give Plaintiff due process before they terminated his right to carry a firearm and after. Defendants fail to make any argument related to due process other than that Plaintiff had no property right, which Plaintiff has defeated that position above. Defendants were required to give pre and post due process to Plaintiff, and they did not. Therefore, Plaintiff claims for due process move forward.

**POINT FIVE**
**Plaintiff stated a claim for substantive due process since**
**once he received the right to carry a firearm,**
**it became an ownership right**

"Substantive due process is an area of the law "famous for its controversy, and not known for its simplicity" DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 598 (3d Cir. 1995).  "[O]wnership is a property interest worthy of substantive due process protection." Id. at 600. Contrary to Defendants' argument, ownership of a firearm is property sufficient to require substantive due process just like land ownership. There is no difference and Defendants do not cite precedential Third Circuit caselaw stating otherwise. Defendants do not further develop their argument why substantiate due process claim should not move forward in this case.

**POINT SIX**
**Plaintiff has alleged sufficient facts that Monell liability is present**
**since the Court must view the facts in favor of Plaintiff**

Plaintiff stated the following in his Third Amended Complaint:

5.     At all times hereto, Defendant Sheriff Brian Szumski, was an official policymaker and made the official decision to revoke Plaintiff's License to Carry a Firearm, retaliate against him for his free speech, failed to provide due process and violated Plaintiff's Second Amendment rights.

6.     At all times material hereto, Defendant Brian Szumski was a servant, agent, and/or employee of Defendant Luzerne

County, and was acting under the color of state law when he engaged in official policy, custom, and decision to violate Plaintiff's First Amendment, Second Amendment and Fourteenth Amendment rights.

7.    Defendant, Luzerne County and Luzerne County Sheriff's Department, failed to train its officials and personnel not to retaliate against a citizen who engaged in free speech, to provide due process and adhere to the Constitution and Bill of Rights regarding the License to Carry a Firearm.

8.    Defendant, Luzerne County and Luzerne County Sheriff's Department, have acquiesced in all actions taken by its public officials and personnel since they had knowledge of the same yet refused to remedy the situation or stop it. (Doc. 57).

Consequently, Defendants' arguments have no merit since Plaintiff has alleged a Monell liability claim. As Judge Carlson noted in Bartnicki, "[t]hus, to the extent these claims are brought against the school district, those claims will remain." Bartnicki v. Scranton Sch. Dist., 2021 U.S. Dist. LEXIS 64702, *2 f.1 (M.D. Pa. 2021).

## **CONCLUSION**

For the foregoing reasons, Plaintiff requests that this Court deny

Defendants' Motion to Dismiss.

Respectfully Submitted:

s/Cynthia L. Pollick
Cynthia L. Pollick, Esquire, LLM, MA
Pa ID No.: 83826
PO Box 757
Clarks Summit PA 18411
(570) 510-7630
pollick@lawyer.com

## **CERTIFICATE OF SERVICE**

Cynthia L. Pollick, Esquire, hereby certifies that on May 1, 2021, she

served a copy of Plaintiff's Brief in in Opposition by serving a copy via

electronically on Defendants' counsel:

Sean P. McDonough, Esquire
Dougherty Leventhal & Price LLP
75 Glenmaura National Boulevard
Moosic PA 18507

Respectfully Submitted:

s/Cynthia L. Pollick, Esquire
Cynthia L. Pollick, Esquire, LLM, MA
Pa. I.D. No.: 83826
PO Box 757
Clarks Summit PA 18411
(570) 510-7630