**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAWRENCE J. KANSKY,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 20-cv-42** |
| **v.** | : | **(JUDGE MANNION)** |
| **LUZERNE COUNTY, LUZERNE COUNTY SHERIFF'S DEPARTMENT, AND BRIAN SZUMSKI,** | : | |
| **Defendant** | : | |

**<u>MEMORANDUM</u>**

Before the court is Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint. (Doc. 66). The Third Amended Complaint (the "Complaint"), (Doc. 57), brings claims under 42 U.S.C. §1983, asserting violations of the First, Second, and Fourteenth Amendments. (Id. ¶9).

**I.     BACKGROUND[1]**

The Complaint alleges the following: Plaintiff noticed an injured raccoon in Wilkes-Barre, near 72 W. North Street. (Doc. 57 ¶12). After calling

---

[1] In considering a motion to dismiss, the court considers only the facts alleged in the complaint, exhibits attached to the complaint, and matters of public record. *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016).

911 several times and waiting for 8 hours, he shot the raccoon. (Id. ¶13). About two weeks later, he was charged with counts of reckless endangerment, disorderly conduct, and unlawful acts concerning taking of furbearers. (Id. ¶14). He later spoke to local media, including *The Citizen's Voice*, about the charges, explaining that he shot the animal "to put it out of its misery and to protect the public." (Id. ¶¶15–16). His license to carry a firearm was then revoked by Defendant Brian Szumski, Luzerne County Sheriff. (Id. ¶21).

Five counts are asserted. Plaintiff claims that:

(I) Defendants retaliated against him in violation of the First Amendment;

(II) Defendants' policy regarding revocation of firearms is vague and overbroad;

(III) Luzerne County's policy on revocation of firearms violated his rights under the Second Amendment;

(IV) Defendants violated his rights to Due Process through their revocation of his license to carry a firearm; and

(V) Defendants' policy on revocation of licenses to carry firearms is unconstitutional under the Second Amendment.

## II.    LEGAL STANDARD

Defendants move to dismiss under Fed.R.Civ.P. 12(b)(6), which provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544 at 555).

## III.   DISCUSSION

Plaintiff brings this suit under 42 U.S.C. §1983, which allows for a private suit by one who was deprived of a constitutional right by a person acting under the color of law. *See Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020).

### A. Municipal Defendants

It appears from the Complaint that each claim is brought against all Defendants, including the municipal Defendants: Luzerne County and the Luzerne County Sheriff's Department. Before discussing each claim individually, the court addresses the possibility of municipal liability generally.

#### 1) Sheriff's Department

It must first be noted that the Luzerne County Sheriff's Department is merely a sub-unit of Luzerne County, and so is not properly a separate defendant. *See Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997) ("[W]e treat the municipality and its police department as a single entity for purposes of section 1983 liability."); *Benard v. Washington Cnty.*, 465 F. Supp. 2d 461, 470 (W.D. Pa. 2006); *Open Inns, Ltd. v. Chester Cnty. Sheriff's Dep't*, 24 F. Supp. 2d 410, 416 n.13 (E.D. Pa. 1998). For this reason, Plaintiff's claims for municipal liability will be analyzed as against a single municipal defendant, Luzerne County.

### 2) Luzerne County

Municipalities may only be held liable under §1983 "when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013).

Defendants argue that Plaintiff has failed to adequately plead that a policy or custom existed. (Doc. 72 at 43). To plead §1983 liability against a municipality, a plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). The complaint may not "simply paraphrase[] §1983," *id.*, for a "formulaic recitation of the elements of a cause of action will not do." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (quoting *Twombly*, 550 U.S. at 555).

The Complaint mostly offers conclusory statements of policy. Plaintiff first asserts that his allegation that Defendant Szumski "was an official policymaker and made the official decision to revoke Plaintiff's License to Carry a Firearm," is adequate to plead municipal liability. (Doc. 79 at 11; Doc. 57 ¶5). It is true that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v.*

- 5 -

*City of Cincinnati*, 475 U.S. 469, 480 (1986). But "not every decision by municipal officers automatically subjects the municipality to §1983 liability." *Id.*

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official— even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.

> *Id.*[2]

The Complaint does not allege that Defendant Szumski had final authority to establish Luzerne County policy with respect to revocation of firearms. The fact that state law gives the county Sheriff authority to grant and revoke licenses, *see* 18 Pa. Cons. Stat. §6109(g), (i), does not mean the Sheriff establishes county policy each time he does so. *See Pembaur*, 475 U.S. at 482 n.12. Plaintiff's allegation of a single decision by the Sheriff to

---

[2] The Supreme Court in *Pembaur* further explained:

Thus, for example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff *is* the official policymaker, *would* give rise to municipal liability.

475 U.S. 469, 482 n.12 (1986).

revoke Plaintiff's license is therefore insufficient to plead the existence of a policy. *See id.*

Plaintiff contends that other allegations suffice. (Doc. 79 at 11–12). But these amount to nothing more than formulaic recitations of the elements of §1983 municipal liability. The Complaint alleges that Defendant Szumski "engaged in official policy, custom, and decision to violate Plaintiff's First Amendment, Second Amendment, and Fourteenth Amendment rights." (Doc. 79 at 11–12; Doc. 57 ¶6). It alleges that Luzerne County "failed to train its officials and personnel not to retaliate against a citizen who engaged in free speech, to provide due process and adhere to the Constitution and Bill of Rights regarding the License to Carry a Firearm." (Doc. 79 at 12; Doc. 57 ¶7). And it alleges that Luzerne County "acquiesced in all actions taken by its public officials and personnel since they had knowledge of the same yet refused to remedy the situation to stop it." (Doc. 79 at 12; Doc. 57 ¶8). These conclusory statements are not entitled to a presumption of truth, and do not satisfy Federal Rule of Civil Procedure 8(a)(2)'s pleading standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (3d Cir. 2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The Complaint eventually does include a policy. It alleges that Luzerne County "has a policy that allows for the revocation of citizens' License to Carry a Firearm without giving due process using the alleged reason that 'a person whose character/reputation indicates danger to public safety' without any evidence or a criminal conviction.'" (Doc. 57 ¶59). Although he speculates that this revocation policy "had to be enacted pursuant to Code or other County legislation," Plaintiff points the court to no such enactment. (Doc. 57 ¶36). Nor does he allege that others were subjected to revocation under this policy.[3] But despite its ambiguity, the court concludes that this allegation is partly factual, and, construed "in the light most favorable" to Plaintiff, *Phillips*, 515 F.3d at 233, narrowly satisfies Plaintiff's obligation to "identify a custom or policy, and specify what exactly that custom or policy was." *McTernan*, 564 F.3d at 658. Thus, Defendant Luzerne County will not be dismissed entirely due to insufficient pleading of a policy.

---

[3] In fact, nowhere does the Complaint actually state that Plaintiff himself was subjected to revocation under the County's alleged "danger to public safety" policy. It simply alleges that "Defendant Luzerne County Sheriff Brian Szumski revoked Plaintiff's License to Carry a Firearm without any pre or post due process and in violation of the Second Amendment." (Doc. 57 ¶21). The court, required to "draw all reasonable inferences in favor of the non-moving party," *Phillips*, 515 F.3d at 232, is left to infer the Sheriff's reason.

### 3) Defendant Szumski in his official capacity

Finally, to the extent Plaintiff sues Defendant Szumski in his official capacity, those claims will be treated as ones against the municipality of which the Sheriff is an agent—Luzerne County. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

### B. Count I - First Amendment Retaliation

Plaintiff claims that "Defendants were aware of [his] protected activities and retaliated against him by causing him mental anxiety, stress and sleeplessness, and a continued campaign of harassment for having exercised his constitutional rights to bear arms and exercise free speech." (Doc. 57 ¶25). Although he also invokes his Second Amendment right to bear arms, this count is titled "First Amendment Retaliation," and Plaintiff specifies that he is "not seeking a First Amendment retaliation claim for the act of shooting at the injured racoon, but rather his statements to the press and accessing the courts."

To establish a First Amendment retaliation claim, a plaintiff must first demonstrate that his speech was protected. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 793 (3d Cir. 2000). Defendants argue that "raccoon mercy killing together with the subsequent explanation do not constitute

protected expression." (Doc. 72 at 6). According to Defendants, Plaintiff's concession that his claim is not based on the act of shooting the raccoon "does not alter the analysis … because the act itself is inextricably interwoven with the speech Kansky maintains is protected." (Id. at 6 n.6). Plaintiff in response reiterates that his speech to the media forms the basis of his claim, not his act of shooting the raccoon. (Doc. 79 at 5).

In support of their theory, Defendants cite *Ruff v. Long*, 111 F. Supp. 3d 639, 647 (E.D. Pa. 2015). *Ruff* concluded that the plaintiff's act of bringing a bag of firearms to a police station was not First Amendment expressive conduct, despite the plaintiff's explanation that he did so to make a statement about community gun violence. *Id.* at 646–47. The plaintiff there had not presented evidence that during this act he asserted anything to anyone or that officers at the station understood his act to communicate a message. *Id.* at 646. The court reasoned that "[p]ost-conduct explanations of [the plaintiff's] 'secret' intent, raised after he is stopped for suspicious activity or files suit" did not show that his conduct was First Amendment expression. *Id.* at 646.

Plaintiff here does not assert that his statements to the media demonstrate that his act of shooting the raccoon was First Amendment

expression. He instead alleges that the statements themselves were the basis for Defendants' alleged retaliation.

The First Amendment forbids government abridgment of speech, U.S. Const. amend. I, and thereby "protects the right of an individual to speak freely." *Smith v. Ark. State Highway Emps.*, 441 U.S. 463, 464 (1979). Plaintiff spoke to the media. He now alleges that he faced retaliation because of what he said, *not* because of what he did. Nor does he contend that his speech transforms his conduct into protected expression. The court is not convinced by Defendants' argument that simply because this speech is associated with conduct, it is not itself protected by the First Amendment. Thus, Defendants have not met their burden of showing that no First Amendment retaliation claim has been stated.

To the extent the Complaint brings this count against Defendant Szumski in his official capacity, however, and thereby brings it against the County, it is inadequate. That is because §1983 municipality liability requires a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). There is no allegation that the Sheriff was implementing a Luzerne County policy when he allegedly retaliated against Plaintiff because of his speech. The policy which Plaintiff alleges the county has

adopted allows for revocation of licenses from those "whose character/reputation indicates danger to public safety." (Doc. 57 ¶59). It does not direct officials to revoke the licenses of, or "mount a campaign of harassment" against, those who complain to the press. (Doc. 57 ¶25). If the Sheriff retaliated against Plaintiff in violation of the First Amendment, then, he did not do so because of a Luzerne County policy.

So there is no direct causal link between a municipal policy and the alleged constitutional transgression, and Count I will be dismissed as against Luzerne County.

## C. Count II - Vagueness and Overbreadth

Plaintiff next challenges what it calls "Defendants' policy that revokes a licensed firearm," asserting that it is vague and facially overbroad. (Doc. 57 ¶¶27–30). Without first identifying the policy,[4] the Complaint asserts that it "does not provide any guidelines of what consists 'a person whose character/reputation indicates a danger to public safety.'" (Doc 57 ¶30). *See* Pennsylvania Uniform Firearms Act, 18 Pa. Cons. Stat. §6109(e)(1)(i) ("A license to carry a firearm … shall not be issued to … [a]n individual whose

---

[4] Among the allegations pertaining to Count 3, the Complaint alleges that "Defendants had a policy and custom that allowed Defendant Luzerne County Sheriff Brian Szumski to revoke Plaintiff's License to Carry a Firearm without giving him due process for the alleged reason that his '… character/reputation indicates danger to public safety.'" (Doc. 57 ¶50).

character and reputation is such that the individual would be likely to act in a manner dangerous to public safety."). This count invokes §1983, but does not indicate which constitutional right was violated.

Defendants recognize that a statute or policy may violate the Due Process clause of the Fourteenth Amendment by reason of its vagueness. *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1135 (3d Cir. 1992). Because a procedural due process claim requires a protected property interest, *Taylor Inv., Ltd. v. Upper Darby Tp.*, 983 F.2d 1285, 1293 (3d Cir. 1993), Defendants argue that Plaintiff has not stated such a claim because he has no protected property interest in a license to carry a firearm. (Doc. 72 at 13–18). And because a law may violate the First Amendment if it is overbroad, *Free Speech Coal. v. Att'y Gen.*, 974 F.3d 408, 427 (3d Cir. 2020), Defendants reiterate their argument that Plaintiff has not alleged any protected expression. In response, Plaintiff contends that he does have a protected interest in the license, and further submits that it is not the Uniform Firearms Act he challenges, but Luzerne County's policy.

The court first notes that these claims may not be brought against Defendant Szumski in his individual capacity, because, as discussed in Section III.A.2, there is no allegation that he is responsible for the policy.

- 13 -

Thus, no plausible claim to relief has been stated as against him, so Count II will be dismissed as against Defendant Szumski in his individual capacity.

### 1) Vagueness

A procedural due process claim requires deprivation of "a property interest protected by state law." *Dondero v. Lower Milford Twp.*, 5 F.4th 355, 358 (3d Cir. 2021). Accordingly, "[s]tate law defines property interests for purposes of procedural due process claims." *Ruiz v. New Garden Twp.*, 376 F.3d 203 (3d Cir. 2004).

Defendants focus on this requirement, arguing that Plaintiff does not have a protected property interest in his license to carry a concealed weapon. (Doc. 72 at 12). Because a county Sheriff enjoys "broad discretion" in issuing and revoking such licenses, they assert, a citizen's interest in that license is not protected by procedural due process. (Id.). *See Midnight Sessions, Ltd. v. City of Phila.*, 945 F.2d 667, 679 (3d Cir. 1991) (concluding that applicants could not have a protected property interest in dance hall licenses where Pennsylvania statute gave city "broad discretion" in granting such licenses).

The property interest of which Plaintiff alleges he was deprived is created by state law. The Pennsylvania Uniform Firearms Act of 1995 provides that a license to carry a concealed firearm "shall be issued if, after

- 14 -

an investigation … it appears that the applicant is an individual concerning whom no good cause exists to deny the license." 18 Pa. Cons. Stat. §6109(e)(1). This provision further lists criteria describing individuals to whom "[a] license shall not be issued," including "[a]n individual whose character and reputation is such that the individual would be likely to act in a manner dangerous to public safety." §6109(e)(1)(i). The Sheriff may revoke a license to carry firearms "for good cause," and must revoke "for any reason stated in subsection (e)(1) which occurs during the term of the permit." §6109(i).

In support of the proposition that the Sheriff enjoys broad discretion as to the issuance and revocation of firearm licenses, Defendants cite *Harris v. Sheriff of Delaware Cnty.*, 675 A.2d 400, 402 (Pa. Commw. Ct. 1996) ("[T]he legislature intended in Section 6109 of the Act to confer discretion on sheriffs.") and *Tsokas v. Bd. of Licenses & Inspections Review*, 777 A.2d 1197, 1202 (Pa. Commw. Ct. 2001) (same). Defendants further rely on *Potts v. City of Phila.*, 224 F. Supp. 2d 919 (E.D. Pa. 2002), which, also relying in part on *Harris* and *Tsokas* for their language about §6109's discretionary nature, concluded that no protected property interest existed in a revoked §6109 license. *Id.* at 941–42.

*Potts* reasoned that like the Pennsylvania Dance Hall Act at issue in *Midnight Sessions*, which prohibited the issuance of a license "until it shall be ascertained that the place for which it is issued … is a safe and proper place for the purpose for which it shall be used," 945 F.2d at 674, §6109's "dangerous to public safety" criterion provides a sheriff with "broad discretion" in revoking licenses. *Potts*, 224 F. Supp. 2d at 940. Adding *Harris* and *Tsokas* in further support of this "far-reaching discretion," the court concluded that the plaintiff had no protected property interest in the revoked concealed-carry permit for purposes of procedural due process. *Id.* at 941–42.

The Commonwealth Court of Pennsylvania, on the other hand, has held that the revocation of a concealed-carry license granted under §6109 implicates a property interest protected by procedural due process. *Caba v. Weaknecht*, 64 A.3d 39, 60 (Pa. Commw. Ct. 2013); *see also Murphy v. Doe Police Detective #1*, 2021 WL 4399646, at *4–5 (E.D. Pa. 2021) ("This Court agrees with the reasoning in *Caba* and concludes that the Plaintiff has a protected property interest in the [license to carry a firearm]."). The *Caba* court was not persuaded by *Harris* or *Tsokas*, because those decisions relied on old statutory language: while §6109 formerly provided that the sheriff "may" issue a license, it had been updated to provide (and still provides) that

a license "shall be issued" unless good cause exists to deny it. 64 A.3d at 61; 18 Pa. Cons. Stat. §6109(e)(1). The revised statute also makes revocation mandatory for specified reasons, provides a right to appeal revocation, and requires the sheriff to act on an application within 45 days and provide written notice and reasons for refusal. *Id.* at 62; §6109(e), (g), (i). The Commonwealth Court reasoned that these amendments "evidence clear legislative intent to both guide and limit the discretion of the licensing authority with respect to the grant, denial, and revocation of licenses." *Caba*, 64 A.3d at 62.

*Caba* noted that the right of citizens to bear arms is recognized by the federal and state constitutions. *Id.* at 58. While acknowledging that this right is not absolute, the court reasoned that "by enacting the licensing scheme for carrying a concealed weapon, the General Assembly created a path by which Commonwealth citizens who meet certain statutory eligibility criteria are entitled to *the benefit* of exercising their constitutional right to bear arms in defense of themselves in a way that is not automatically available to all Commonwealth citizens." *Id.*; *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 ("The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits."). It concluded that a person who meets the

statute's eligibility criteria "has a legitimate interest in carrying a concealed weapon for self-defense," and described this interest as "worthy of … no less protection than that afforded to an interest in a driver's license," an interest which has been recognized as constitutionally protected.[5] *Caba*, 64 A.3d at 59.

*Caba* also concluded that the statute does not give a sheriff the sort of "unfettered" discretion with respect to revocation which would preclude the recognition of a protected property interest. *Id.* at 63. As limits on the sheriff's discretion, the court cited to the requirements that there be "good cause" before revocation and that the sheriff provide the specific reason for revocation as limits on the sheriff's discretion. *Id.* It also reasoned that the statute's provision for a licensee's right to appeal revocation demonstrated a legislative intent to confer a property right. *Id. Caba* further rejected *Potts*' premise that a sheriff exercises discretion in determining that a licensee's character and reputation is such that he would be likely to act in a manner dangerous to public safety, characterizing that determination as "a question of fact." *Id.* ("Because [the sheriff] found that [the plaintiff] lacked the requisite

---

[5] *See Dixon v. Love*, 431 U.S. 105, 112 ("It is clear that the Due Process Clause applies to the deprivation of a driver's license by the State."); *Pa. Game Comm'n v. Marich*, 666 A.2d 253, 257 (Pa. 1995) ("A driver's license also cannot be revoked without the procedural due process required by the Fourteenth Amendment.").

character and reputation, he was required by law (*i.e.*, he had *no discretion*) to revoke [the plaintiff's] license.").

The court finds *Caba*'s reasoning persuasive and is therefore not convinced by Defendants' argument that Plaintiff interest in his license to carry a concealed firearm is not protected by procedural due process. Accordingly, the court concludes that Defendants have not at this stage met their burden of showing that Plaintiff has failed to state a void for vagueness claim.

### 2) Overbreadth

As with Count I, Defendants argue that the act of shooting a racoon is not expression protected by the First Amendment, and that Plaintiff has thus not stated a First Amendment overbreadth claim. The Complaint does allege that Plaintiff spoke to the media, so speech is involved.

But a law is only overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Free Speech Coalition*, 974 F.3d at 427 (3d Cir. 2020). The Complaint contains no factual allegations which would raise the possibility of overbreadth above a speculative level. First, as discussed in Count I, Plaintiff does not allege that his own First Amendment rights were violated by the county's policy, for he does not allege that the Sheriff retaliated against him

pursuant to a policy of doing so. Second, Plaintiff alleges no other instances in which this policy was applied in a manner that violates the First Amendment. Third, the policy suggested by the Complaint does not itself indicate any likelihood of unconstitutional application: it merely calls for revocation of concealed-carry licenses from individuals dangerous to public safety. It is not immediately evident how such a statute risks a substantial number of First Amendment–violative applications. For these reasons, the court concludes that Plaintiff has failed to state a claim for overbreadth.

Therefore, Count II will be also dismissed to the extent it claims overbreadth.

### D. Count III - Second Amendment As-Applied Challenge

#### 1) Right to carry concealed firearm

The Complaint's third count alleges that "Defendants had a policy or custom that allowed Defendant Luzerne County Sheriff Brian Szumski to revoke Plaintiff's License to Carry a Firearm without giving him due process for the alleged reason that 'his character/reputation indicates danger to public safety.'" (Doc. 57 ¶50). It further alleges that Defendants did not investigate whether Plaintiff was a "danger to public safety" and that Plaintiff had not been convicted of the crimes charged after the shooting. (Id. ¶¶37, 41). This count otherwise adds various allegations regarding Plaintiff's

- 20 -

character as well as statements concerning his danger to society and an absence of good cause to revoke his license. (Doc. 57 ¶¶37–51).

It is important first to clarify what exactly was revoked. In Pennsylvania, carrying a "firearm *concealed* on or about [one's] person" without a license is a felony. 18 Pa. Cons. Stat. §6106(a)(1) (emphasis added). One may apply to the county sheriff for a license to carry a concealed firearm in the Commonwealth, and such a license "shall be issued" unless no good cause exists to deny one. §6109(a), (b), (e). By contrast, "no license is required in order to carry a firearm *openly* on one's person," except in Philadelphia. *Commonwealth v. Hicks*, 208 A.3d 916, 925 (Pa. 2019) (emphasis added); §6108. Although Plaintiff describes the allegedly revoked license generally as a "License to Carry a Firearm," (Doc. 57 ¶51), he later cites §6109(i), impliedly acknowledging that a §6109 license is what he possessed. (Doc. 57 ¶36).

So Plaintiff alleges that he was deprived of his license to carry a concealed firearm. The right at issue, then, as Defendants recognize, is the right to carry a concealed firearm. They argue that Plaintiff has not stated a Second Amendment as-applied claim because "the Second Amendment does not protect the right of a member of the general public to carry a concealed weapon in public." (Doc. 72 at 28).

Since this motion was briefed, the Supreme Court decided that the Second Amendment "guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111, 2156 (2022). *Bruen* invalidated a New York statute under which an applicant had to prove "proper cause"—a standard that had been interpreted to require a showing of "special need"—to obtain a license to carry a concealed firearm outside his home or place of business for self-defense. 142 S.Ct. at 2122, 2132. Because the state did not allow the open carry of firearms, a concealed-carry license was the only way to lawfully carry one. *Id.* at 2169. The Court concluded that the government had not met its "burden to identify an American tradition justifying the State's proper-cause requirement," and held the law unconstitutional "in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 2156.

Yet *Bruen* did not disturb the prior understanding that laws prohibiting only *concealed* carry of firearms were constitutional. *See id.* at 2150 ("The historical evidence from antebellum America does demonstrate that *the manner* of public carry was subject to reasonable regulation …. States could lawfully eliminate one kind of public carry—concealed carry—so long as they

- 22 -

left open the option to carry openly."); *id.* at 2146 ("In the early to mid-19th century, some States began enacting laws that proscribed the concealed carry of pistols and other small weapons. As we recognized in [*District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)], the majority of 19th-century courts to consider the question held that these prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues."); *Bruen*, 142 S.Ct. at 2146 ("[T]he history reveals a consensus that States could *not* ban public carry altogether. Respondents' cited opinions agreed that concealed-carry prohibitions were constitutional only if they did not similarly prohibit *open* carry."); *Peruta v. County of San Diego*, 824 F.3d 919, 929 (9th Cir. 2016) ("[T]he history relevant to both the Second Amendment and its incorporation by the Fourteenth Amendment leads to the same conclusion: The right of a member of the general public to carry a concealed firearm in public is not, and never has been, protected by the Second Amendment."); *People v. Miller*, 312 Cal. Rptr. 3d 655, 662–63 (Cal. Ct. App. 2023) (explaining that *Bruen* "does not suggest" that California's concealed carry prohibitions are unconstitutional).

Because the right to publicly carry a concealed firearm is not protected by the Second Amendment, Plaintiff has failed to state a Second Amendment as-applied claim. This count must therefore be dismissed.

### 2) Qualified Immunity

Defendant Szumski is also correct that there can be no Second Amendment claim against him in his individual capacity because he is entitled to qualified immunity. (Doc. 72 at 28). "The doctrine of qualified immunity protects governmental officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted).

When Defendant Szumski revoked Plaintiff's license in 2019, no constitutional right to carry a concealed firearm outside the home was clearly established. *See Drake v. Filko*, 724 F.3d 426, 431 (3d Cir. 2013) ("[W]e decline to definitively declare that the individual right to bear arms for the purpose of self-defense extends beyond the home."); *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008) ("Like most rights, the right secured by the Second Amendment is not unlimited … For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues."). Therefore, even if Plaintiff had alleged an infringement of the

Second Amendment, this claim against Defendant Szumski in his individual capacity would have to be dismissed.

### E. Count IV - Due Process

#### 1) Procedural due process

On this count, titled "Violation of Due Process Rights," the Complaint adds conclusory assertions regarding due process. (Doc. 57 ¶¶54–57). By way of its allegations that prior to revocation, "Defendants were required to provide due process, which included notice, explanation of the evidence against him and an opportunity to rebut the same," (Id. ¶55), and that "Defendants never provided pre-deprivation due process," (Id.  ¶56), the court can infer an allegation that Defendants did not provide Plaintiff with a pre-revocation hearing. This count also incorporates all preceding paragraphs; relevant among those are the allegations that Plaintiff possessed a license to carry a firearm and that Defendant Szumski revoked that license. (Id. ¶¶11, 21, 53).

Defendants contend that Plaintiff has stated no procedural process claim because he has not asserted a protected property interest. (Doc. 72 at 35). As discussed in Section III.B.a, the court disagrees with this argument, and therefore will not dismiss on this basis.

Defendants further assert that "even if a concealed carry license is a property interest subject to Fourteenth Amendment protection, Plaintiff was not entitled to a pre-deprivation hearing." (Doc. 72 at 36). The court agrees and concludes, based on the allegations and matters of public record, that the Complaint has not stated a procedural due process claim because Plaintiff received due process.

As to what process Plaintiff has been afforded: First, although the Complaint does not directly say so, it must be inferred from Plaintiff's allegations that the Sheriff did provide him with the reason for revocation, as he was required to do by 18 Pa. Cons. Stat. §6109(i) ("Notice of revocation shall be in writing and shall state the specific reason for revocation."). Plaintiff alleges that his license was revoked, and challenges the County's policy of revoking concealed-carry licenses from those whose "character/reputation indicates danger to public safety." (Doc. 57 ¶¶21, 50). So this "danger to public safety" ground must have been the reason given to Plaintiff by the Sheriff for revocation, otherwise Plaintiff would not be challenging it. Second, Plaintiff has the right to appeal the Sheriff's revocation in the Luzerne County Court of Common Pleas. §6109(i) ("An individual whose license is revoked may appeal to the court of common pleas for the judicial district in which the individual resides.").

As to what process Plaintiff believes he was entitled, the Complaint alleges that "Defendants were required to provide due process, which included notice, explanation of the evidence against him and an opportunity to rebut the same." (Doc. 57 ¶55). On this score, the court is persuaded by the reasoning in *Potts*, 225 F. Supp. 2d at 943. In determining whether the plaintiff there, whose §6109 license had been revoked for the same reason, was entitled to a pre-deprivation hearing, the court considered the factors set out in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).[6]

With regard to the private interest affected, *Potts* reasoned that although the plaintiff "may have a strong personal interest in his gun permit, the permit does not constitute a basic necessity of life, such as income, or even employment, that would strongly militate in favor of a pre-deprivation hearing." 224 F. Supp. 2d at 943 (citing *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) (holding that pre-termination hearing was required for recipients of welfare, and explaining that "[f]or qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care")).

---

[6] "[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest." *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

Considering the probable value of additional procedural safeguards, *Potts* opined that the potential benefit of a pre-deprivation hearing did not outweigh its costs: "the potential fatal consequences of leaving a license to carry a gun … in the hands of someone who poses a danger to the community while he or she pursues a pre-deprivation hearing." 224 F. Supp. 2d at 943. As to the government's interest, the court reasoned that "the City [of Philadelphia] undoubtedly has a prevailing interest in ensuring that persons licensed to carry a firearms do not present a danger to public safety." *Id.*

The court finds that Plaintiff's interest in keeping his license is outweighed by the County's interest in protecting its citizens from the consequences of permitting dangerous individuals to carry concealed firearms while they await a hearing. It further finds that the procedures afforded to Plaintiff, namely, notice of the reason for revocation and an opportunity to appeal that revocation in the Court of Common Pleas, meaningfully protect his property interest from wrongful deprivation in a manner sufficient to satisfy procedural due process. *See Goldberg*, 397 U.S. at 262–63 ("The extent to which procedural due process must be afforded to the recipient is influenced by the extent to which he may be condemned to suffer grievous loss, and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary

adjudication."). Plaintiff offers *Goldberg* in support of this claim, but the court agrees with *Potts* that the temporary loss of one's concealed-carry permit is less grievous, and therefore entitled to less procedural protection, than a welfare recipient's loss of those benefits. 224 F. Supp. 2d at 943; 397 U.S. at 264.  For these reasons, the court concludes that Plaintiff has not stated a claim for a violation of procedural due process.

### 2) Substantive due process

To the extent Plaintiff claims a violation of substantive due process, the interest at issue would presumably be that in a license to carry a concealed firearm. Such a claim would be duplicative of his Second Amendment claim. "[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing those claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Because the Second Amendment governs the right which Plaintiff alleges was infringed, analysis based on substantive due process is inappropriate. Therefore, to the extent this count includes a substantive due process claim, it must be dismissed.

Because the court concludes that Plaintiff cannot state any due process claim, Count IV will be dismissed.

### F. Count V - Unconstitutional Policy in Violation of Second Amendment

The complaint's final count alleges that "Luzerne County and Luzerne County Sheriff Department has a policy that allows for the revocation of citizens' License to Carry a Firearm without giving due process using the alleged reason that 'a person whose character/reputation indicates danger to public safety' without any evidence or a criminal conviction.'" (Doc. 57 ¶59). Under this count, "Plaintiff seeks all remedies elimination of said policy as unconstitutional and an injunction ceasing the implementation of said policy, attorney fees and costs." (Id.).

As with Count II, this count must be dismissed as against Defendant Szusmki because there is no allegation that he was responsible for the alleged policy. And as with Count III, this Count must also be dismissed as against Luzerne County because Plaintiff has not alleged a violation of the Second Amendment.

### IV.    CONCLUSION

In sum, Defendants' motion to dismiss, (Doc. 66), will be **GRANTED IN PART** and **DENIED IN PART**. All claims against the Luzerne County

Sheriff's Department will be **DISMISSED**. With regard to the individual counts:

(1) Count I will be dismissed as against Luzerne County and Defendant Szumski in his official capacity.

(2) Count II will be dismissed as against Defendant Szumski in his individual capacity and to the extent it claims overbreadth.

(3) Count III will be dismissed.

(4) Count IV will be dismissed.

(5) Count V will be dismissed.

An appropriate order will follow.

_s/ Malachy E. Mannion_
**MALACHY E. MANNION**
**United States District Judge**

**DATE: November 2, 2023**
20-42-02

- 31 -